NORRIS EMERSON, Appellee, *vs.* SARAH A. FLEMING, Appellant.

*Opinion filed October 28, 1910.*

1. SPECIFIC PERFORMANCE—*when contract should be enforced.* A contract understandingly executed, and entered into without fraud or misrepresentation, to convey land at a price then satisfactory to the proposed vendor and which was as large as any property similarly situated had up to that time sold for, should not be denied specific enforcement as unconscionable, even though the value of the property in a speculative way may have increased after the contract was made.

2. SAME—*effect where a complainant fails to perform on time.* Failure of the proposed vendee to fully perform his part of the contract within the sixty days allowed therefor should not defeat his right to specific performance if he made a conscientious effort to perform within the time allowed, and failed only because he was unable to find the vendor at her home or place of business in time to make the tender.

3. SAME—*when a complainant is entitled to have rent deducted from purchase price.* Where the purchase money due under a contract to convey is deposited by the vendee in a bank for the benefit of the vendor upon the vendor's refusal to perform, it is not

inequitable, upon decreeing specific performance, to require the amount received by the vendor as rent after the vendee was entitled to the property under the contract to be deducted from the purchase money.

4. PRACTICE—*what is not a proper way of questioning existence of complainant.* A defendant who desires to question the existence of the complainant or the authority of counsel to bring suit in the complainant's name should do so by some method other than cross-examination of witnesses called upon the merits of the case.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

This was a bill in chancery filed by Norris Emerson, the appellee, against Sarah A. Fleming, the appellant, in the circuit court of Cook county, for the specific performance of the following contract in writing:

"CHICAGO, *September 13, 1907.*

"Received of Norris Emerson two hundred ($200) dollars as part payment towards the purchase of the following described real estate: The south half of lot eighteen (18), in block thirty-one (31), School Section addition to Chicago, Cook county, Illinois, which is hereby bargained and sold to the said Norris Emerson for the sum of five thousand two hundred ($5200) dollars,—five thousand ($5000) dollars more to be paid on the delivery of a good and sufficient warranty deed of conveyance of the same within sixty (60) days from this date, or as much sooner thereafter as the deed is ready for delivery, after the title has been examined and found good. Conveyance to be made free and clear of all liens and encumbrances, homestead and dower rights, except only the general taxes levied after the year 1906, and to any unpaid special assessments for improvements not completed at the date hereof. The purchaser to be furnished with a complete merchantable abstract of title, with a continuation brought down to this date, and who shall be entitled to the rents from said premises from the date of delivery of said warranty deed. It is herewith understood and agreed that the vendor shall receive $5000 net for the above described property. Should the title to the property not prove good, then the $200 to be refunded, but should the said Norris Emerson fail to perform this contract on his part promptly at the time and in the manner above specified, (time being of the essence of this contract,) then the above two hundred ($200) dollars shall be forfeited by him as liquidated damages and the above contract shall be and become null and void.

SARAH A. FLEMING. (Seal.)"

An answer and replication were filed and the cause was referred to the master in chancery to take the proofs and report his conclusions. The master took the proofs and filed a report, in which he recommended that a decree be entered in accordance with the prayer of the bill. The court, after overruling exceptions to said report, entered a decree requiring the appellant to convey said premises to the appellee, and authorized the master to deduct from the purchase price of the premises, as rent, $25 per month from November 14, 1907, that being the day upon which the appellee tendered the purchase price of said premises to appellant and deposited the same with the Northern Trust Company for the use of the appellant. The appellant has brought the case to this court for review, by appeal.

It appears from the evidence that on the 13th day of September, 1907, the appellant was the owner of the premises in controversy; that on that day one Frank Robertson, a real estate agent who was in the employ of Murphy & Campbell, a real estate firm of the city of Chicago, called upon the appellant and informed her that he had a party who desired to purchase her lot; that while the lot in controversy had been owned by the father of the appellant for a number of years, the appellant had owned the same only for a few months prior to September 13, 1907; that for a number of years prior to the time appellant acquired title to said lot the firm of Murphy & Campbell had collected the rents on said property and had their sign "For Sale" on said premises, but said firm or Robertson had had no direct communication with the appellant with regard to the sale of said premises after she became the owner thereof until Robertson called upon her on the 13th of September, 1907; that Robertson informed the appellant the party to whom he referred desired to use the premises, in connection with adjoining premises, for the purpose of building thereon a factory building, and advised her that the property had been dead property for a long time and that it was

246—23

a good opportunity for her to dispose of the same, and in-
formed her he could get $5000 for the lot. The lot was
at that time improved by two small buildings, which to-
gether were renting at from $25 to $30 a month. The ap-
pellant at first thought the lot was worth more than $5000,
but after some conversation with Robertson with reference
to the price and advantages of the property and its prob-
able future, the appellant offered to sell if she could get
$5000 net and the purchaser would accept the abstract of
title, without further expense, which her father had upon
the property, and within a day or two the instrument in
writing heretofore set forth was signed by appellant and
delivered by her to Robertson. It also appears from the
evidence that Wyllys Baird, of the real estate firm of Baird
& Warner, of the city of Chicago, desired to purchase the
property in question for the appellee, who was a customer
of his firm, and having seen the sign "For Sale" of Mur-
phy & Campbell on the property, he called up, by telephone,
Murphy & Campbell's office, and in response to said tele-
phone message Robertson called on Baird at his office, and
Baird said his customer would pay $5000 for the property
and for Robertson to see what he could do with the owner;
that Baird then prepared, in blank, the memorandum of
agreement and gave or mailed it to Robertson; that when
the appellant stated she would not take less than $5000 for
her property and that she would not pay any commissions
or anything for the continuation of the abstract, Robertson
said to her he would have to add $200 to the price to cover
commissions and the expense of continuing the abstract,
and he then, in her presence, changed the memorandum so
that it read as it now appears, and the appellant signed the
same and Robertson took the agreement to Baird, and af-
ter examining the same Baird said he would not stand on
$200,—that his client would take the property at $5200,—
and that Robertson, after the abstract was brought down
and paid for, would have to split the balance of the $200,

as commissions, with his firm, which Robertson agreed to do, and he then delivered the memorandum of agreement, signed by appellant, to Baird, and Baird gave Robertson the check of Baird & Warner for $200, which was delivered by Robertson to Murphy & Campbell, who gave the appellant credit therefor; that Robertson saw the appellant within a day or so and informed her the deal was closed or would be closed, and she said it was all right; that within a few days thereafter the appellant called upon Murphy & Campbell and stated that she had been deceived as to the value of her lot by Robertson and that the deal was off, and the appellant was informed that the contract had been delivered to Mr. Baird and they had received $200 thereon as earnest money. The appellant then called upon Baird and informed him she had been deceived by Robertson and that she would not carry out the contract, and asked to see the contract. Baird stated the contract was at the recorder's office, but if she would call in a day or so she could see the contract and he would give her a copy thereof. There was nothing further done until November 8, when Baird called at the home of the appellant and tendered her $4800 in cash and asked her to sign a deed conveying the property to Emerson. The appellant did not sign the deed at that time but claimed she was to have $5000. Baird informed her $200 had been paid to Murphy & Campbell, and asked her if she received $5000 if she would convey. She stated she did not know what she would do until she had seen her lawyer. On the 11th and again on the 12th of November Baird called at the place of business of the appellant but did not find her. He also called during that time at her home but did not find her. He again called on the 14th of November and tendered the appellant $5000 in cash and demanded that she execute and deliver a deed for the premises to the appellee. The appellant then said it was too late and declined to receive the $5000 or to con-

vey said premises to the appellee, whereupon the appellee brought this suit.

JOHN E. OWENS, and JOHN T. FLEMING, for appellant.

FREDERICK Z. MARX, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended that the contract is unconscionable, oppressive and inequitable and its execution was obtained by fraud and misrepresentation, and that for those reasons a court of equity should not decree the specific performance thereof. We have read the evidence found in this record and have been unable to discover anything unconscionable, oppressive or inequitable in the contract, and we do not think the execution of the contract is shown to have been obtained by fraud and misrepresentation. It is clear the appellant, who is an educated woman, a school teacher by profession and of mature years, fully understood she was selling her property and that she was to receive therefor $5000 net, and that is what the contract provides she shall receive. From a perusal of the evidence we are forced to the conclusion that the appellant sought to recede from the sale on the ground that other persons who owned property in the immediate vicinity of the location of her lot had within a short time, probably within a few days after she had agreed to sell her lot, been offered from $1000 to $3000 more for property no more desirable or more valuable than the property of appellant; that upon learning that other holders of property in that vicinity had been offered more for their property than she was to receive for hers, she became immediately impressed with the view that she had sold her property for less than it was worth and for that reason she was not morally bound, at least, to carry out her contract of sale. The evidence does not show that any misrepresentations were made to the appellant whereby she was induced to execute said contract or that she was mis-

led or deceived by Robertson. He informed her she could get $5000 for her property and that she would have to pay commissions and furnish an abstract. She declined to pay commissions or to furnish an abstract other than such abstract as she then had. Robertson thereupon modified the memorandum of agreement to meet her view, and upon Baird seeing the contract, as the agent of Emerson, acceded to its terms, whereupon the contract was delivered to him by Robertson and he delivered to Robertson a check for $200 as earnest money, and the appellant was immediately informed by Robertson that the sale had been or would be closed, and she seemed satisfied and said "all right." Within a few days, however, her mother was offered $6000 for her lot or was given to understand she could get that amount for it, and it was rumored that a cousin had been offered $8000 for her lot, and thereupon the appellant immediately determined, apparently, to refuse to carry out her contract. Much evidence was taken upon the question of the value of this property, and while it seems to have assumed a speculative form by reason of some change in the locality, which the record does not disclose, about the time the appellant sold her lot, it clearly appears from the evidence that the appellant received, at the time she closed the contract with Robertson, an amount which was fully as great as any property up to that time in that neighborhood, similarly situated to the property of appellant, had been sold for. Our conclusion is that the contract for the sale of said real estate was understandingly signed by the appellant; that it was not entered into by reason of any fraud practiced upon the appellant, and that the court would not have been justified in declining to decree a specific performance of the contract by reason of the fact that the amount agreed to be paid for the premises was inadequate.

It is next contended that the appellee failed to comply with the terms of the contract. He had sixty days in which to perform, and if he failed to perform within that time

he was to forfeit the earnest money, which was held by Murphy & Campbell. On the 8th of November he called, by his agent, Baird, upon the appellant and offered her $4800 in cash and demanded a deed. She said she was entitled to $5000. He thereupon informed her that $200 of the $5000 had been paid to and was held by Murphy & Campbell, and he asked her if she would convey on the payment to her of $5000. She said she would not state what she would do until she had seen her lawyer. On September 11, and again on September 12, Baird called at the public school building where appellant was a teacher, and at her home, and then had $5000 with him, a deed ready for execution and a notary public to take the acknowledgment. He was, however, unable to find the appellant. He found her on the 14th of November and offered to pay her $5000 and asked her to make a deed, when she said it was too late. We think the appellee made every reasonable effort to carry out the terms of the contract and to pay to the appellant the purchase money within the terms of the contract. It has been said by this court, in cases of this character, that the main question is, did the complainant make a conscientious effort on his part to comply honestly with the contract? (*Kimball* v. *Tooke,* 70 Ill. 553; *Monson* v. *Bragdon,* 159 id. 61; *Ebert* v. *Arends,* 190 id. 221.) Our conclusion is that the trial court properly held that the appellee made a conscientious effort on his part to comply honestly with the contract, and that he should not be defeated in this suit because he failed to find the appellant before the 14th day of November, 1907, under the circumstances disclosed by this record.

It is further contended that the appellant should have been permitted to inquire before the master as to the identity of the appellee and as to the authority of Baird to prosecute this suit. There is an intimation in the brief of appellant's counsel that the complainant is a fictitious person and that Baird is prosecuting this suit without author-

ity, and the counsel for the appellant sought to raise these questions upon the cross-examination of the witnesses for the complainant on the hearing before the master. The suit was commenced in the name of the appellee, and the appellee was represented before the master, and upon the trial, by counsel. Had the appellant desired to question the existence of the appellee or the authority of counsel to represent the appellee, this should have been done otherwise than by the cross-examination of the witnesses called by the appellee upon the merits of his case. The only ruling that the record shows was made by the master upon the questions thus sought to be raised was, that it was not proper to inquire about those subjects on cross-examination,—that is, that the subject sought to be inquired of by the witnesses for the complainant was not germane to their original examination, and was not, therefore, proper cross-examination, and the appellant was for that reason not permitted to examine the witnesses called by the appellee upon the subject of the identity of the appellee or the authority of Baird to represent appellee. The ruling of the master obviously was correct, and the trial court did not err in overruling the exception of the appellant to that ruling of the master.

It is finally insisted that the court erred in requiring the appellant to pay $25 per month to the appellee as rent from November 14, 1907, on said premises, and in authorizing that amount to be deducted from the $5000 purchase money which was on that day deposited in the bank by the appellee for the benefit of the appellant but which subsequently was deposited with the master. The $5000 was by the action of the appellant tied up in the hands of the bank or in the hands of the master, and did not, by reason of that fact, produce any interest subsequent to November 14, 1907, and while the money was thus idle the appellant was in possession of the property and was receiving the rent therefor. It was therefore not inequitable that the appellant

should be required to account to the appellee for the rent received by her from the property, less the taxes paid by her, which was the decree entered by the court.

Finding no reversible error in this record the decree of the circuit court will be affirmed.    *Decree affirmed.*